UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:22-cr-00033-8 |
| | § | |
| STEVEN MORIZONO | § | |

### MORIZONOS' MEMORANDUM IN MITIGATION OF PUNISHMENT

STEVEN MORIZONO, Defendant, through his attorney of record, Antuan L. Johnson, presents this, his memorandum in mitigation of punishment for consideration, urges a variance based on factors below, and that his sentence be at the very low end of the Guidelines or, in the alternative, no more than 84-months.

### I. Overview

On March 10, 2022, Defendant was arrested and detained by federal authorities. Since this date, Defendant has remained in Custody. Defendant was re-arraigned on March 5, 2025. Defendant accepted responsibility for his actions and pled guilty to Counts 3 through 34, 36 and 37 of the Indictment. At the plea, the parties agreed that the applicable sentencing range would be 97-121 months and that Defendant would preserve his right to argue. Defendant believes a sentence of no more than 84 months, followed by three years of supervised release, would reflect the seriousness of the offense, provide just punishment for the offense, and afford adequate deterrence to criminal conduct.

Defendant recognizes that, depending on how this Court rules on his objections and his request, the Guidelines (as indicated in the PSR) recommend 210 months incarceration. Defendant stands by his guilty plea and will accept his punishment.

Defendant believes that he qualifies for a downward variance pursuant to 18 U.S.C. § 3553(b). Defendant's proposed sentence, followed by supervised release, is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).; *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

## II. Background

Various factors come into play when analyzing individuals who engage in unlawful behavior. As discussed in this Memorandum, Steven certainly understands the error of his actions, and that those actions have consequences. (See Exhibit A)

Having been incarcerated for 3 years 7 months and 22 days Steven has had ample time to reflect, to contemplate his life, and has become more mature. He understands the gravity of his errors, he has taken responsibility for his action and he is eager to turn his life around and move into the next chapter.

## III. Positive Time While Spent Incarceration

As Steven explains in his letter, he has experienced much while incarcerated and has expressed the differences between being free versus now. During the time he spent in both the Joe Corley Detention Center in Conroe and the FDC-Houston, Steven has made the most of his time by working as a trustee, working in the kitchen, working as a floor worker, helping other inmates by instructing meditation classes and performing acupressure on inmates with chronic problems, working as a librarian, studying, and also giving approx 390 hours of his time as an ACE instructor. I have attached his class

certificate.

These classes are similar to the classes that are being offered to inmates in the Bureau of Prisons (BOP). As this Court is aware, the First Step Act of 2018 (Public Law 115–391) was signed into law on December 21, 2018. This Act includes several requirements of the BOP that are "related to developing and implementing a risk and needs assessment system, providing evidence-based recidivism reduction programs and productive activities to incarcerated people, and applying time credits" toward early release from secure custody. U.S. Gov't Accountability Off., GAO-23-105139, 5 (2023). Further, in addition to other awards and incentives, the First Step Act allows inmates to earn time credits that may reduce the amount of time they spend in the BOP. *See* 18 U.S.C. § 3632(d)(1)–(4). Incarcerated individuals may earn time credits "toward early transfer to prerelease custody (i.e., home confinement or Residential Reentry Centers) or to supervised release if they meet certain First Step Act eligibility requirements." U.S. Gov't Accountability Off., GAO-23-105139, 16 (2023)[1].

To comply with the intents in the First Step Act, the BOP created an Evidence Based Recidivism Reduction Program (EBRR), which is:

> …a group or individual activity that (1) has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; (2) is designed to help individuals succeed in their communities upon release from prison; and (3) may include components related to, *inter alia*, social learning and life skills, parenting skills, morals or ethics, cognitive behavioral treatment, substance abuse treatment, vocational training or prison work programs, and faith-based classes or services.

---

[1] https://www.ussc.gov/education/first-step-act-earned-time-credits#:~:text=%C2%A7%203632(d)(1,secure%20custody%2C%20see%2018%20U.S.C.

*See* 18 U.S.C. § 3635(3)

As such, the BOP created incentive-based programs designed to help inmates with "meaningful reentry programming to support a successful return to society, reduce recidivism, promote public safety, and reduce institution misconduct.[2]" Under the First Step Act, inmates can earn time credits that "may be applied toward prerelease custody (i.e., community placement in and residential reentry center or home confinement) or early transfer to supervised release with United States Probation." *Id.* Specifically, inmates who participate can earn 10 days of time-credit for every 30-days they are incarcerated and enrolled in these classes. *Id.*

As indicated above, Steven has spent 43 months and 22 days incarcerated. During this time, he has been productive with bettering himself by taking approved classes that would earn him time credit in the BOP. Defendant respectfully requests this Honorable Court to take notice of his earned time credits when considering a possible variance.

## V. Legal Argument

This Court must now determine a sentence for Steven's offense, taking into account the factors set out in 18 U.S.C § 3553. Among others, those factors include the history and the characteristics of the Defendant, the nature and circumstances of the offense, the need to avoid unwarranted sentence disparities for similar conduct, the kinds of sentences available, and whether the sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence.

---

[2] https://www.bop.gov/inmates/fsa/docs/fsa-approved-program-guides-en.pdf?v=1.0.0

Certainly, in determining punishment in a case like this, it is important to determine whether Steven is a likely recidivist or someone who has matured through his experiences to the point that he is highly unlikely to commit violations of the law in the future.

The U.S. Supreme Court made clear in *United States v. Booker* that the Sentencing Guidelines are advisory.[3] A Defendant's Guideline range is therefore just one of many factors that the Court must consider when imposing a sentence and "may not presume that a Guideline sentence is reasonable[.]"[4]  The Court must conduct its own independent review of all the relevant factors, considering all information relating to Steven's background, character, and conduct, and "make an individualized assessment based on the facts presented."[5]  Further, a sentence must be sufficient, but "'*not greater than necessary*' to accomplish the goals of sentencing," and is inappropriate where it exceeds the minimum sentence necessary to achieve its purposes.[6]

Considering the above, Steven would respectfully request that this court consider a variance of the sentence that is recommended by the Guidelines. In support thereof, Steven would show the Court:

1. <u>Just Punishment</u>

Steven accepts that he must be punished for his actions in this matter.  Steven does not contest what he did was wrong.  Indeed, he pled guilty and he has demonstrated genuine

---

[3] 543 U.S. 220 (2005).
[4] *Gall v. United States*, 552 U.S. 38, 47 (2007).
[5] *Gall*, 552 U.S. 38 at 49-50.
[6] *Kimbrough v. U.S.*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a))

contrition for his actions. But he begs the Court to consider his objections to the PSR, the conditions he has endured while incarcerated and his age.

    2.    <u>Deterrence</u>

Although the case calls for a sentence of up to 21 years' incarceration, the government recommends a punishment of 97-121 months.

Punishing Steven up to 84 months would be a deterrent, While many believe that the higher the sentence, the greater the effect in deterring others, the empirical research shows no relationship between sentence length and deterrence. Section 3553(a)(2)(B) requires the District Court to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." According to the United States Sentencing Commission ("USSC"), the federal inmate population at the end of 1976 was 23,566, and at the end of 1986 it was 36,042. (U.S. Department of Justice, Bureau of Justice Statistics, SOURCEBOOK OF CRIMINAL JUSTICE STATISTICS – 1987, Table 6.52 (1987). As of October 30, 2025, the federal inmate population was 155,001[7].

Steven is now 62 years old. He is a husband and a father. He will be in his 60's or 70's (depending on his sentence) upon his release from custody. Sentencing Steven up to 84 months would comply with the statutory objective and serve as a deterrent to him.

    3.    <u>Protection of the Public</u>

Steven is not a danger to the public. As indicated above and consistent with his criminal history in his PSR, Steven is not a violent offender. Additionally, the stressors

---

[7] https://www.bop.gov/about/statistics/population_statistics.jsp

from his life experiences and trying to put is children through college and provide adequate care for his son and wife after losing his parents was a motivating factor for Steven to commit this crime. As indicated in his letter to the Court, Steven has truly matured while incarcerated. Further, as noted by the USSC, a lengthy incarceration of Steven would create a specific loss of essential caretaking of his family, his wife and children who rely on him for care and financial support. His family has suffered and will continue to suffer with his absence during incarceration. Lastly, as noted in the PSR, the costs of incarceration and supervision in Federal Prison facilities is, at least, $4,309.00 per month, in Community Correction Centers at least $3,453.00 per month, and on Supervision is, at least, $391 per month, which will only go up. p. 26 ¶ 114 of the PSR.

4. <u>Rehabilitation</u>

Steven has demonstrated clear signs of rehabilitation, which began during the time incarcerated. As indicated in his letter, Steven has explained that, while he values the reflective value of the time he has spent incarcerated, the prison environment is of detriment to his mental and physical health. Steven has tried to remain productive. As he writes, he has spent his time teaching classes and helping other inmates, and taking educational classes.

### IV. Conclusion

A sentence of up to 84 months would reflect the seriousness of the offense, provide just punishment for the offense, and afford adequate deterrence to criminal conduct, as required by 18 U.S.C. § 3553(a)(2)(A) and (a)(2)(B).

Steven has matured and does not blame anyone for his commission of the offense. It was his decision to go down that road and he knows that ultimately the responsibility is entirely his own. But, as discussed above, it is important to understand how his history affected his decisions.

In retrospect, Steven knows how serious, and is deeply sorry for his conduct, and what his conduct has done to society, his family, and friends. He blames only himself and accepts the entire responsibility for his actions.

Steven has been incarcerated for 43 months and 22 days up to this point and has endured all kinds of issues, and the sentence he receives from this Court will no doubt have a significant impression on him. Finally, a sentence of imprisonment of up to 84 months would adequately protect the public from further crimes, if any, of Steven, and allow him the opportunity to continue his life for him and his family.

For the reasons stated above, Steven respectfully requests that this Court impose a sentence of up to 84 months followed by three years of supervised release to promote respect for the law.

Respectfully submitted,

/s/ Antuan Johnson
Antuan L. Johnson,
State Bar No. 24090191
2850 Fannin #1908
Houston, Texas 77002
Telephone:   (713) 855-5855
Email: Antuan@JohnsonBell.com

ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

    I certify that a copy of the foregoing memorandum has been electronically sent to Assistant United States Attorney Kate Suh and Jay Hileman via e-mail on November 4, 2025.

                                           /s/ Antuan Johnson
                                           Antuan L. Johnson,